FREDENBERG et al. v. WHITNEY et al.

(District Court, W. D. Washington, N. D. January 10, 1917.)

No. 113.

1. SHIPPING ⬤⟶16—PENALTIES—BOARD OF STEAMBOAT INSPECTORS—REVIEW OF FINDINGS.

The courts are without authority to review findings of steamboat inspectors by writ of certiorari.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 30–44.]

2. EQUITY ⬤⟶46—JURISDICTION—"ADEQUATE REMEDY AT LAW."

To defeat the jurisdiction of equity on the ground of an "adequate remedy at law," the remedy at law must be as complete, practical, and efficient to the ends of justice and its prompt administration as a remedy in equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163.

For other definitions, see Words and Phrases, First and Second Series, Adequate Remedy.]

3. SHIPPING ⬤⟶16—PENALTIES—EQUITABLE JURISDICTION—ADEQUATE REMEDY AT LAW.

Equity has jurisdiction of a suit by an officer of a steam vessel to set aside an alleged illegal order suspending his license, and to enjoin the enforcement of fines aggregating $13,000 assessed against him for acting after such suspension, on the ground that his right to make a defense to any proceeding against him to enforce such penalties, which may or may not be instituted at the option of the government, does not afford him an adequate remedy at law.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 30–44.]

4. EQUITY ⬤⟶46—JURISDICTION—ADEQUATE REMEDY AT LAW.

A legal remedy, to be adequate, and to exclude the jurisdiction of equity, must be a remedy which the party himself controls and can assert at the moment.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163.]

5. SHIPPING ⬤⟶14—REVOCATION OF OFFICER'S LICENSE—AUTHORITY.

The provisions of Rev. St. §§ 4440, 4450 (Comp. St. 1913, §§ 8202, 8212), authorizing the suspension or revocation of the license of a licensed officer of a steam vessel by the local board of inspectors for bad conduct, violation of rules, etc., are clearly penal, and must be strictly construed. The board is without authority to suspend or revoke a license, except for a cause plainly stated in the statute and after a hearing on written notice to the officer, advising him of the charge against him and giving him an opportunity to be heard thereon.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 28, 29.]

In Equity. Suit by John H. Fredenberg and the Kingston Transportation Company against Bion B. Whitney and Henry C. Lord, as

Local Inspectors at Seattle, Wash., in the Steamboat Inspection Service, Department of Commerce of the United States, and John K. Bulger, Supervising Inspector for the First District, and Roscoe M. Drumheller, Collector of Customs, District No. 30, United States Customs Service. On motion to dismiss bill. Denied.

Peterson & MacBride, of Seattle, Wash., for petitioners.
Clay Allen, U. S. Dist. Atty., and Winter S. Martin, Asst. U. S. Dist. Atty., both of Seattle, Wash., for defendants.

NETERER, District Judge. The bill in equity alleges: That the petitioner Fredenberg is a citizen of the United States, and the Kingston Transportation Company a corporation of the state of Washington, having paid its annual license fee as required by statute; that Fredenberg is mate and pilot of steam vessels under government license No. 54040-2-3. That defendants Whitney and Lord are local inspectors in the United States steamboat inspection service, with headquarters at Seattle. That defendant Bulger is the supervising inspector of the First district of said service. That Drumheller is the collector of customs for district No. 30, United States Customs Department, under the Treasury Department of the service. That on June 23, 1916, Fredenberg was navigating the steamer Bremerton from Seattle en route to Bremerton, and about 4 o'clock p. m. the steamer Flyer, also en route from Seattle to Bremerton, struck the Bremerton in the stern. That no damage was done to either vessel, but that petitioner reported the matter in writing to the local inspectors, Whitney and Lord. That on the 15th of August, 1916, charges were made by the local inspectors against petitioner as follows, omitting caption:

"You, as a licensed officer of steam vessels, are hereby charged with violation of article 25, rule IX, page 10, of the Pilot Rules for certain inland waters of the Atlantic and Pacific Coasts and of the coast of the Gulf of Mexico, in connection with the collision between the steamer Kitsap and the steamer Flyer on June 23, 1916, which article specifies that 'in narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel.' You are directed to appear at this office on Thursday, August 17, 1916, at 10 a. m., to make answer to said charge. You may be represented by counsel if you so desire."

That on September 1st, following, the defendants Whitney and Lord, acting as local inspectors, rendered a decision wherein it was held that the charge against petitioner Fredenberg was sustained, and pursuant to sections 3 and 4 of the Pilot Rules for certain inland waters, approved June 7, 1897, and which read as follows:

"Sec. 3. That every pilot, engineer, mate or master of any steam vessel, and every master or mate of any barge or canal boat, who neglects or refuses to observe the provisions of the preceding section, shall be liable to a penalty of fifty dollars, and for all damages sustained by any passenger in his person or baggage by such neglect or refusal: Provided, that nothing herein shall relieve any vessel, owner or corporation from any liability incurred by reason of such neglect or refusal.

"Sec. 4. That every vessel that shall be navigated without complying with the provisions of this act shall be liable to a penalty of two hundred dollars, one-half to go to the informer, for which sum the vessel so navigated shall be

liable and may be seized and proceeded against by action in any District Court of the United States having jurisdiction of the offense"

—a fine of $50 was imposed against Fredenberg and $200 against the vessel; and on the 18th of September following the defendant Drumheller, as collector of customs, made demand upon the petitioner for the payment of such penalty, and on the same day made demand upon the claimants of the vessel for the sum of $200. It is further alleged that, in addition to the penalty placed against the petitioners, the defendants Whitney and Lord attempted to suspend the license of Fredenberg, and made an order purporting to effect such suspension; that thereupon Fredenberg appealed from the decision of the local inspectors to Supervising Inspector Bulger, and on September 28, 1916, the defendant Bulger, as supervising inspector, affirmed the decision of the local inspectors. It is then alleged: That the acts of the local inspectors and of the supervising inspector in suspending the license was contrary to law and without jurisdiction and void. That following such suspension, and pending the appeal, the petitioner continued to act as mate and pilot on the steamer Bremerton, and the following letter was addressed to Fredenberg by the defendant Drumheller, dated October 27, 1916, omitting caption:

"Referring to office letter of the 18th ultimo, relating to penalty incurred by you, for acting as mate and pilot, on the American steamer Bremerton, while without authority of license to act in that capacity, owing to suspension of your license, this office has been instructed by the Secretary of Commerce to impose a penalty of one hundred dollars, under section 4438, Revised Statutes, for each voyage made by you in the capacity of mate and pilot since September 2, 1916. You are therefore requested to pay to this office immediately, the sum of thirteen thousand dollars, it having been shown that the vessel made one hundred and thirty trips with you acting as mate and pilot without authority of license to so act. * * *"

That a penalty in a like sum was on the same day assessed against the steamer Bremerton, and a like demand made for the payment of this sum. The prayer is that the order of suspension against Fredenberg be declared null and void, and that the defendants, and each of them, be permanently enjoined from enforcing the order of suspension, or enforcing any penalties for the violation thereof in any sum whatsoever.

The defendants have moved to dismiss the bill—

"upon the ground that the facts as stated therein do not constitute a cause of action for equitable relief, and for the further reason that the plaintiffs have an adequate remedy at law by writ of certiorari, or by defending and setting forth the facts upon which they pray for relief in this cause, in their answer, in the event that proceedings be taken by the collector to recover the penalties, and for the reason that there is a misjoinder of parties defendant."

[1] The ground of the motion that there is an adequate remedy at law by writ of certiorari, I think, has been practically abandoned, and, if not abandoned, I think that Williams v. Potter, 210 Fed. 318, affirmed 223 Fed. 423, 139 C. C. A. 17, disposes of the contention. The Circuit Court of Appeals (223 Fed. at page 424, 139 C. C. A. at page 18) said:

"The courts have no authority to review the findings of the steamboat inspectors by appeal or writ of error. The most they can do is to see that the

inspectors act within their jurisdiction, and that the Constitution and statutory rights of citizens are not impaired."

[2, 3] The contention that there is a misjoinder of parties does not appear. The contention that there is an adequate remedy at law by defense to a suit to recover the penalty, I think, must likewise fail. In order to be adequate, the remedy at law must be as complete, as practical, and as efficient to the ends of justice and its prompt administration as a remedy in equity. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. The Supreme Court of the United States, in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, held that a suit by stockholders against the corporation to enjoin the directors and officers from complying with the provisions of a state statute, alleged to be unconstitutional, was properly brought within the equity rule of the court. This was a case where the Minnesota rate law was in question. It was contended that there was an adequate remedy at law, for that the officers could make defense when they were arrested and brought to the bar of the court. The court held that it would not be equal protection to an individual to allow him to come into court and make his defense upon condition that, if he fails, the penalty would subject him to imprisonment, or to extravagant and unreasonable loss. The law, under such circumstances, would impose such conditions as would work abandonment of individual rights, and such a gross hardship as would deny a speedy and adequate remedy at law, especially when penalties are so enormous as to deter a person from asserting a constitutional right and jeopardizing his liberty, or resulting in great loss of property. In Barber v. Barber, 21 How. 591, 16 L. Ed. 226, and Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, the Supreme Court has held, in effect, that the remedy, to be adequate, must, to the chancellor, in exercising sound discretion, appear to be as plain, practical, efficient, and speedy as the remedy in equity, in order to decline jurisdiction; and that the legal remedy, both in respect of the final relief and the motive of attaining it, must be as efficient in law as in equity, was held by the same court, in Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005, and unless it appears that the legal remedy is neither obscure or doubtful as to its adequacy or completeness, the chancellor should not decline to extend the equitable arm of the court.

[4] The legal remedy, if any, which could be asserted when formal action is entered to recover the penalty, is a remedy which rests solely in the will of the government. No action has been instituted. Demand has been made. When action will be instituted, and opportunity to make legal defense afforded, rests solely with the discretion of the public officials. "Adequate remedy at law," in Wheeler v. Bedford, 54 Conn. 244, 7 Atl. 22, is said to be a remedy vested in the complainant, to which he may at all times resort at his own option, fully and freely, without let or hindrance; and in Bank v. Stone (C. C.) 88 Fed. 383, at page 397, the court said:

"It would seem clear that a court of equity will not withhold relief from a suitor merely because he may have an adequate remedy at law if his adversary

chooses to give it to him. A remedy at law cannot be adequate, if its adequacy depends upon the will of the opposing party."

The Supreme Court of the state of Washington, in Ritterhoff v. Puget Sound Bank, 37 Wash. 76, at page 81, 79 Pac. 601, at page 602 (107 Am. St. Rep. 791), in an action brought to cancel a note held by the bank, which plaintiffs claimed was forged, in taking equitable cognizance, said:

"Respondents' credit may be continuously affected, or injured, by reason of the existence of this claim, for appellant, at its election, may continue to hold the note and assert a claim thereon for an indefinite period, and then commence an action at law for its enforcement immediately prior to such time as the note would be barred by the statute of limitations."

In the instant case the petitioners, having assessed against them, respectively, $13,000, have their credit destroyed to that extent. They are powerless to have their rights adjudicated in a court of law until the defendants seek to ·collect the penalty in a court of law. This may be postponed indefinitely. The statute of limitations, perhaps, never would run against the government, and hence the petitioners would be remediless, unless through the equity side of the court. In these days of industrial expansion, parties should have a right to have any issue which involves their financial status speedily adjusted, and this right should not be permitted to rest upon the discretion of the other party, and a legal remedy, to be adequate, must be a remedy which the party himself controls and can assert at the moment. When there is a doubt in the mind of the chancellor as to the adequacy of the remedy, that doubt should be resolved in favor of the petitioners. Simpkins, Equity Suit, p. 25; Rumbarger v. Yokum (C. C.) 174 Fed. 55.

[5] The court having concluded to entertain the petition, it must be determined whether it states any grounds for relief. It is contended that, an appeal having been prosecuted, the operation of the order of suspension was suspended by the appeal until the appeal was disposed of, and that otherwise the right of appeal would be inoperative, because in many cases the penalty would have been suffered by the time the appeal was heard by the supervising inspector; and it is further contended that the license could not be suspended, as the charge made against the petitioner did not provide for suspension of license as a penalty for violation. It is conceded that petitioner was charged only for violation of article 25, rule IX, for the violation of which suspension of license is not a penalty. It is contended, however, by the defendants, that the inspectors had authority to suspend the license by virtue of section 4439, Rev. Stat. (Comp. St. 1913, 8201), which reads:

"Such license shall be suspended or revoked upon satisfactory proof of bad conduct, intemperate habits, incapacity, inattention to his duties, or the willful violation of any provision of this title applicable to him"

—and that:

"Section 4450 [section 8212] is enlarged by the Pilot Rules, and in any event misconduct of any kind, whether it grows out of the violation of a pilot rule or whether it would be classed as negligence or misconduct, broadly speaking,

without regard to any statute, comes clearly within the terms of section 4450 and gives the local board jurisdiction to revoke or suspend a license."

It is observed, however, that this section provides that the accused must have reasonable notice in writing of the time and place of such investigation, and notice implies advice of charge to be investigated.

The rules of practice promulgated by the Department of Commerce for the steamboat inspection service (May 13, 1916, Ed., page 125) further emphasizes this fact. The first paragraph provides:

"1. *Suspension and Revocation of License.* The inspector shall, when charges have been duly filed against a licensed officer of a vessel, furnish the accused with a copy thereof, setting forth specifically their character and the section of the statutes or the rules of the board that have been violated."

The law in issue is clearly penal, and under all of the authorities, must be strictly construed. Liberal construction, as suggested by the defendants, cannot prevail in such a proceeding. Nor can the penalty be invoked and the provisions enforced unless the penalty is plainly imposed by the statute. Tiffany v. Bank, 18 Wall. 409, 21 L. Ed. 862. Nor can a party be subjected to a penalty for the violation of a requirement upon which he has not been afforded opportunity to answer. If it was sought to suspend the license of the petitioner, he should have been notified of the charge made and afforded an opportunity to defend. This court, in Joyce v. Bulger et al., 240 Fed. 817, said:

"Section 4440 of the Revised Statutes [Comp. St. 1913, § 8202] provides that when any person applies for authority to be employed as chief, second or third mate of ocean or coastwise steam vessels, the inspectors shall require satisfactory evidence of the knowledge, experience, and skill of the applicant, and, if satisfied of his qualifications and good character, they shall grant him a license authorizing him to perform such duties for the term of five years upon the waters upon which he is found qualified to act, '*but such license shall be suspended or revoked upon satisfactory proof of bad conduct, intemperate habits, unskillfulness, or want of knowledge of the duties of his station, or the willful violation of any of the provisions of this title.*' It is the duty of the local board of inspectors to investigate all acts of incompetency or misconduct committed by any licensed officer, and after reasonable notice in writing given to the delinquent of the time and place of such investigation, witnesses may be examined under oath touching the performance of duties of such licensed officer, and if the board shall be satisfied that such officer is incompetent, or has been guilty of misbehavior, negligence, or unskillfulness, or has endangered life, they shall immediately suspend or revoke his license. Section 4450, Rev. Stat. [Comp. St. 1913, § 8212]."

That the rules of procedure are valid, and authority lodged in the department to make them, and as such have the force and effect of law, has been frequently recognized. United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; Cosmos Exploration Co. v. Gray Eagle Co., 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230. The license was suspended arbitrarily, without notice, and the assessment of the penalty of $26,000 is therefore not warranted.

What has been said disposes of the motion to dismiss, and no opinion is expressed as to the effect of the appeal upon the order suspending the petitioner's license.

The motion is denied.